IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY RUSSELL, JAVIER CASTANEDA, QUEEN STINSON, GARRETT MAGEE, and STEPHEN E. RICHEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br>v.<br><br>ILLINOIS TOOL WORKS, INC., THE BOARD OF DIRECTORS OF ILLINOIS TOOL WORKS, INC., THE ILLINOIS TOOL WORKS, INC. EMPLOYEE BENEFITS INVESTMENT COMMITTEE and JOHN DOES 1-30,<br><br>        Defendants. | Case No. 22 C 2492<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

      Before the Court is Defendants Motion to Dismiss Plaintiffs' First Amended Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiffs alleges that Defendants mismanaged billions of dollars in a retirement Plan to the detriment of participants and beneficiaries in breach of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs' Amended Complaint asserts two counts arising from these ERISA violations: (1) breaches of the fiduciary duty of prudence; and (2) failure to adequately monitor other fiduciaries. Defendants argue that this Court lacks jurisdiction over Plaintiff Castaneda's claims, and that Plaintiffs' generic recordkeeping, generic investment, and derivative monitoring claims fail such that the complaint must be dismissed. For the reasons stated below, the motion to dismiss [34] is denied.

**Discussion**

      A Rule 12(b)(1) motion provides for dismissal of a claim based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "If the federal courts lack subject matter jurisdiction, then [they] can go no further and must dismiss the suit." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the sufficiency of a complaint for purposes of a motion to dismiss, the Court "construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in [the

nonmoving party's] favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (*quoting Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

### A. Subject-Matter Jurisdiction

The Court first rejects Defendants' argument that Plaintiff Castaneda's claim can be dismissed for lack of subject-matter jurisdiction due to a release in Plaintiff's employment separation agreement. A release is not a challenge to subject-matter jurisdiction, but instead an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1); *Horia v. Nationwide Credit & Collection, Inc.*, 944 F.3d 970, 974 (7th Cir. 2019). The Seventh Circuit has noted that complaints "need not anticipate and overcome affirmative defenses" especially as affirmative defenses "typically turn on facts not before the court at that stage in the proceedings." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (cleaned up). While Defendants attached the separation agreement to this motion, this Court cannot take judicial notice of such a document. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Further, at this stage of the proceedings it is unclear whether the release covers the asserted claims, is valid as applied, and if Plaintiff knowingly and voluntarily entered into the separation agreement. These factual determinations cannot be resolved at this stage of the proceedings. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 558-61 (7th Cir. 2011).

### B. Recordkeeping Claim

As outlined by the Supreme Court, "[a]n ERISA fiduciary must discharge [their] responsibility with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use." *Tibble v. Edison Intern.*, 575 U.S. 523, 528 (2015) (*citing* 29 U.S.C. § 1104(a)(1)) (cleaned up). Within those duties comes a duty to monitor investments, remove imprudent ones, and ensure that record keepers do not charge excessive fees. *Hughes v. Nw. Univ.*, 595 U.S. 170, 175-77 (2022). After remand from the Supreme Court in *Hughes*, the Seventh Circuit observed that a breach of the duty of prudence based on excessive recordkeeping fees turns on whether plaintiff pleads sufficient facts to render it plausible that the fiduciary incurred unreasonable fees and failed to take action to reduce them. *Hughes v. Nw. Univ.*, 63 F.4th 615, 631 (7th Cir. 2023) (*Hughes II*).

To determine whether a plaintiff's complaint passes muster, the Court conducts a "careful, context-sensitive scrutiny of a complaint's allegations." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 580 (7th Cir. 2022). It is not enough for a plaintiff to plead that fiduciaries failed to regularly solicit bids from service providers. *Id.* at 579-80. Instead, the Complaint must "allege that the recordkeeping fees were excessive relative to the services rendered." *Id.* at 580 (cleaned up).

*Hughes II* guides the Court's analysis. In *Hughes II*, the Seventh Circuit recognized allegations in the complaint that "the quality or type of recordkeeping services provided by competitor providers are comparable," that "recordkeeping services are fungible and that the market for them is highly competitive," and that "$35 per participant was a reasonable recordkeeping fee based on the services provided by existing recordkeepers and the Plans' features." 63 F.4th at 632. In acknowledging these allegations, the Seventh Circuit held that the complaint plausibly stated a claim that the fees paid by defendant were excessive relative to the

2

recordkeeping services rendered. *Id*. The Seventh Circuit also noted that plaintiffs had "provide[d] examples of several other [] plans that successfully reduced recordkeeping fees by soliciting competitive bids, consolidating to a single recordkeeper, and negotiating rebates." *Id*. The Seventh Circuit specifically rejected the defendant's argument that a plaintiff would have to "prove that another recordkeeper would have offered a lower fee" to proceed past a motion to dismiss. *Id*. at 633.

Here, the allegations in the Amended Complaint align with those that survived in *Hughes II*. Namely, Plaintiffs allege that "[n]early all recordkeepers in the marketplace offer the same range of services and can provide the services at very little cost." Compl. [30] ¶ 67. Plaintiffs also contend that "[t]he Plan should have been able to obtain per participant recordkeeping fees of $26-29" based on comparable plans, plan features, number of plan participants, the number and nature of investment options, the recordkeeping and administrative services available and utilized for the Plan and comparable plans, the participant services available and utilized for plans of this size, and the reputation of the record keepers. *Id.* at ¶ 94. Plaintiffs note that plans of a similar size, between 15,000 and 35,000 participants, were paying "dramatically less" for recordkeeping services and that "the Plan could have obtained recordkeeping services that were comparable to or superior to the typical services provided by the Plan's recordkeeper at a lower cost." *Id.* at ¶¶ 97-98, 103.

Defendants counter by arguing that: (1) Plaintiffs incorrectly focus on requests for proposals; (2) Plaintiffs' comparable plans are irrelevant; (3) Plaintiffs' allegations fail to outline the specific services provided; and (4) that the Amended Complaint should be denied in line with the Seventh Circuit's reasoning in *Albert*. These arguments are unpersuasive. As outlined above, courts must review whether the complaint plausibly alleges whether a "failure to obtain comparable recordkeeping services at a substantially lesser rate was outside the range of reasonable actions that [defendants] could take as plan fiduciar[ies]." *Hughes II*, 63 F.4th at 633. The Amended Complaint discusses that when the Plan Fiduciaries conducted an RFP in 2014, "they failed to select the best alternative" and that the recordkeeping fees were raised directly after the contract took effect. Compl. ¶ 87. Plaintiffs also allege that Defendants should have known this increase was unreasonable and looked at alternative options. Further, Plaintiffs allege that other reputable recordkeeping companies provide the same "essential recordkeeping services"[1] at the same quality, suggesting that the fees Plaintiffs paid "were excessive… based on comparisons to other plans using recordkeepers that provided comparable services for less." *See Mazza v. Pactiv Evergreen Servs. Inc.*, 2023 WL 3558156, *3 (N.D. Ill. May 18, 2023). The Amended Complaint notes that the same foundational services are offered by all recordkeepers for one comprehensive price to all large Plans no matter what services are chosen or utilized. Plaintiffs also list comparable plans with a similar number of participants, similar net assets, and that utilize the same recordkeeper as the Plan here, all of which have lower recordkeeping fees. Based on the above, the Court finds that Plaintiffs have alleged "enough facts to show that a prudent alternative action was plausibly available." *See Tolomeo v. R.R. Donnelley & Sons, Inc.*, 2023 WL 3455301, at *4 (N.D. Ill. May 15, 2023) (*quoting Hughes II*, 63 F.4th at 630).

---

[1] These essential services include: (1) basic account recordkeeping; (2) multi-channel participant and plan sponsor access; (3) daily participant transaction accounting; (4) payroll service; (5) participant tax reporting services; (6) participant confirmations, statements, and standard notices; (7) plan-level reporting and annual financial package; (8) participant education; and (9) plan consulting. Compl. ¶ 68.

## C. Investment Claim

Defendants next contend that Plaintiffs fail to state a claim with respect to a breach of fiduciary duty based on the underperformance of the IWT Target Date Series Funds. "A complaint cannot simply make a bare allegation that costs are too high, or returns are too low. Rather, it must provide a sound basis for comparison—a meaningful benchmark." *Albert*, 47 F.4th at 581 (cleaned up). "[A] combination of a market index and other shares of the same fund can meet this standard, but there is no one-size-fits-all approach." *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 829 (N.D. Ill. Mar. 21, 2023) (cleaned up).

The Amended Complaint plausibly alleges that Defendants breached their fiduciary duty by creating, selecting, and retaining underperforming target date series funds created by Defendants. Specifically, Plaintiffs contend that the performance histories of these funds were less than mediocre when compared to their appropriate peer groups and that the funds lacked appropriate professional fund managers to insure performance similar to commercially available options. Compl. ¶ 104. The Amended Complaint asserts that the IWT Target Date Series Fund can be compared to similar target date series funds to demonstrate the imprudence of this investment selection. Compl. ¶¶ 140-49.

In assessing these allegations, the Court finds *Gaines* instructive. 663 F. Supp. 3d at 829-30. The *Gaines*' complaint identified four funds that substantially underperformed their respective Morningstar fund categories. *Id.* Morningstar fund categories compares funds in the same fund classification that are benchmarked to the same index. *Id.* When considered holistically with Gaines' other allegations, the district court determined this was sufficient to support an imprudence claim. *Id.* Likewise, here, Plaintiffs compared the IWT Target Date Series Funds to other Morningstar fund categories benchmarked to the same index, including the TRP Ret I 2040 I, FIAM TD 2040 Q, and AM Funds 2040 TD Ret R6. Compl. ¶ 148. While Defendants argue that there are flaws in this type of comparison, "that is a factual assertion that does not necessitate dismissal of [Plaintiffs'] claim." 663 F. Supp. 3d at 829.

Defendants attempt to bolster their arguments by explaining that: (1) there are no facts pled showing the glidepath used by the fund was outside the range of reasonableness; (2) the outcome or history of the investment funds do not suggest imprudence; and (3) that the performance of the funds in this case was entirely satisfactory. These arguments are insufficient to warrant dismissal. According to the Amended Complaint, a glidepath is an investment strategy where invested retirement funds automatically rebalance to become more conservative the closer participants get to retirement. Compl. ¶ 110. Plaintiffs allege that the ITW Target Date Series Funds spent an "unusually long time at a high risk level" – over ten years longer than well vetted commercially available target date series funds – causing participants to lose savings needed for retirement. *Id.* at ¶ 135. The Defendants, as fiduciaries, "should have recognized that their target dates were not functioning as stated" and adjusted the glidepath. *Id.* at ¶ 139. Plaintiffs further contend in the Amended Complaint that the ITW Target Date Series Funds consistently underperformed and that prudent fiduciaries should have evaluated the funds against other benchmarks to review and adjust the performance as needed. *Id.* at ¶¶ 140-49. By failing to monitor the investments and adjust the ITW Target Date Series Funds, the funds suffered lower net investment returns. *Id.* at ¶ 154. The Court once again finds that these allegations sufficiently

4

state a plausible claim for a breach of the duty of prudence based on the investment in the ITW Target Date Series Funds.

### D. Derivative Duty to Monitor

Both parties agree that the duty to monitor claim is predicated on the breach of fiduciary duty of prudence claim. *See Albert*, 47 F.4th at 583 ("[D]uty to monitor claims rise or fall with [] duty of prudence and duty of loyalty claims."). Here, as addressed above, the Amended Complaint lays out plausible claims for breaches of the duty of prudence. The Amended Complaint goes further and alleges that Defendants failed "to objectively and adequately review the Plan's investment portfolio," "to monitor and evaluate the performance of the Committee Defendants or have a system in place for doing so," "to monitor the processes by which Plan investments were evaluated," among other failures to monitor the investments at issue. *See e.g.*, Compl. ¶¶ 84, 161. These allegations are sufficient to survive a motion to dismiss.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6) [34] is denied.

**SO ORDERED.**

Dated: June 10, 2024

_____
Sunil R. Harjani
United States District Judge