IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY RUSSELL et al., | |
| Plaintiffs, | Case No. 22 CV 02492 |
| v. | Honorable Sunil R. Harjani |
| ILLINOIS TOOL WORKS, INC. et al., | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Illinois Tool Works, Inc. (ITW) sponsors a retirement plan for its employees. Several participating employees sued ITW, its board of directors, and the Plan's investment committee for allegedly mismanaging Plan assets to the detriment of participants and beneficiaries. Plaintiffs allege that Defendants allocated unvested benefits—which were forfeited back to the Plan—to reduce ITW's contributions rather than Plan expenses borne by participants. They claim that the allocations reduced their benefits and violated the Employee Retirement Income Security Act of 1974 (ERISA), which requires fiduciaries to be loyal exclusively to Plan participants and prohibits actions taken to benefit the employer directly. Defendants move to dismiss these claims as implausible because they did not act as fiduciaries when allocating the forfeited assets, lacked discretion to allocate them otherwise, and provided only incidental benefits to ITW. However, the Court finds that Plaintiffs have sufficiently alleged that Defendants acted as fiduciaries, had discretion under the Plan, and failed to exercise that discretion for the exclusive purposes of benefiting Plan participants and beneficiaries and defraying expenses. While Plaintiffs' allegations of direct liability are sufficient, they fail to plausibly claim that the Committee enabled ITW or the Board as a co-fiduciary to breach their fiduciary duties of loyalty. They also assert liability for conduct barred by ERISA's statute of limitations. Thus, Defendants' motion to dismiss is granted

as to the Committee's co-fiduciary liability and liability for forfeiture allocations before February 21, 2019. The motion is otherwise denied.

**Background**

The following allegations from the Complaint are taken as true for purposes of the motion.[1] The Plan is a defined contribution plan by which employee participants can contribute to individual accounts to accrue retirement benefits. [96] ¶¶ 46–49. It requires that ITW make certain basic and matching contributions to participants' accounts. *Id.* ¶¶ 50, 53. A participant obtains nonforfeitable rights in accrued employer contributions by completing defined periods of service. *Id.* ¶¶ 51–52, 54. An employee's rights in the employer contributions only partially vest if their employment ends before the service period, and under Section 9.2 of the Plan, the unvested portion of employer contributions attributed to their account "shall be forfeited and shall be applied to reduce the amount of Company Matching Contributions or Company Basic Contributions." Plan § 9.2; [96] ¶ 59. Forfeiture of the unvested assets shall also be applied "in accordance with Section 7.4," which provides that the forfeitures in a given year "shall be determined and applied to reduce the amount of Company Basic Contributions and/or Company Matching Contributions, or, effective as of January 1, 2017, to pay reasonable Plan expenses." [96] ¶¶ 60–61 (quoting Plan §§ 7.4, 9.2).

Plaintiffs allege that Defendants are fiduciaries of the Plan. [96] ¶¶ 28, 32, 36, 66. Between 2017 and 2023, Defendants allegedly exercised discretion over the allocation of millions of dollars' worth of forfeited, unvested Plan assets. *Id.* ¶¶ 115–16. They used all forfeitures to reduce ITW's contributions to the Plan and none to pay the Plan's recordkeeping and administrative services

---

[1] The term "Complaint" refers to the second amended complaint [96], which is the operative complaint. It incorporates the Plan by reference, so the Plan [124-1], [131-3] is properly considered in deciding the motion to dismiss, with which all parties agree. *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir .2025).

2

fees, which are paid by participants. *Id.* ¶¶ 65, 116–17; Plan § 10.2. According to Plaintiffs, Defendants intended to benefit ITW through its forfeiture allocation. [96] ¶¶ 118, 177, 184. Defendants allegedly harmed Plaintiffs by charging them greater expenses—and consequently obtaining fewer benefits—than if Defendants had allocated the forfeitures differently. *Id.* ¶¶ 21–25, 118, 178. Plaintiffs claim that Defendants breached their fiduciary duties of loyalty imposed by ERISA and violated ERISA's anti-inurement provision. Defendants now move under Rule 12(b)(6) of the Rules of Civil Procedure to dismiss these claims and any derivative failure-to-monitor or co-fiduciary-liability claims.

## Discussion

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court construes the complaint in the light most favorable to the nonmoving party, accepts well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

### I. ERISA's Statute of Limitations

As a preliminary matter, the Court addresses whether Plaintiffs' new claims, filed in 2025, relate back to their original complaint, filed in 2022, and thus whether the claims are timely under ERISA's six-year statute of limitations. *See* 29 U.S.C. § 1113(d). Under Rule 15(c)(1)(B), an amendment relates back to the date of the original complaint when it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the

3

original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The central inquiry under Rule 15(c) is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (cleaned up). Although Rule 15 may allow new claims and new facts to relate back because it prefers that courts resolve disputes on the merits, it still requires that the original and amended pleadings are "tied to a common core of operative facts." *Coleman v. United States*, 79 F.4th 822, 830 (7th Cir. 2023). Factual allegations that describe two separate occurrences will not satisfy the rule. *Westbrook v. Del. Cnty. Sheriff*, 790 F. App'x 807, 810 (7th Cir. 2019) (affirming that "an allegedly illegal arrest and [the plaintiff's] treatment by jail staff during the resulting detention" were two separate occurrences).

In the original and first amended complaints, Plaintiffs claimed that the Committee breached its fiduciary duty of prudence under Title 29, United States Code, Section 1104(a) by incurring unreasonable recordkeeping fees and mismanaging the Plan's investments. [1] ¶¶ 95–101; [30] ¶¶ 150–56. They also claimed that ITW and the Board were liable for the Committee's breach under co-fiduciary liability or a derivative duty to monitor. [1] ¶¶ 101–08; [30] ¶¶ 157–63. These claims were premised on transactions carried out by Defendants for the Plan's recordkeeping and investments. The complaints contained no allegations about forfeitures under the Plan. Plaintiffs introduced the Plan's vesting and forfeiture provisions and Defendants' conduct of allocating forfeitures for the first time in the operative Complaint. [96] ¶¶ 50–55, 59–61, 113–18. Outside of allegations describing the parties, Plaintiffs' new claims only rely on these new factual allegations. These new allegations about the use of forfeitures for Plan expenses rather than employer contributions are not the same occurrences or transactions as the recordkeeping and

4

investment allegations. It is an entirely new theory of liability based on completely new and different factual allegations.

The operative complaint has new claims and new facts that are too different for Defendants to have had sufficient notice. *See Supreme Auto*, 902 F.3d at 741–42 (holding that new claims about purchasing household items did not relate back to claims about purchasing steel sheets, rods, and tubing because the defendants would not have understood the household items to be "steel products" in the same way). Defendants only had notice about their recordkeeping and investment practices, not their use of unvested funds. Although Plaintiffs' claims all concern the administration of the Plan, any plausible ERISA claim would, so that is too high a level of generality. *See, e.g.*, *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 374–75 (6th Cir. 2015) (denying relation back for new ERISA claim because it challenged "distinct aspects of the Plan's administration" and could have been asserted without any reference to the original complaint's allegations).

Because Plaintiffs' Complaint does not relate back to their original or first amended complaints, their claims at issue on this motion only cover conduct within six years from the time the Complaint was filed. Accordingly, any surviving claims only apply to conduct starting from February 21, 2019.

## II. Breach of Fiduciary Duty (Claim 2)

Turning to the substantive arguments, Defendants move to dismiss Plaintiffs' claim that they breached the fiduciary duty of loyalty imposed by ERISA. A breach-of-duty claim requires a plaintiff to show that (1) the defendants were plan fiduciaries; (2) they breached a fiduciary duty; and (3) their breach resulted in harm to the plan. *Appvion, Inc. Ret. Savings & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 99 F.4th 928, 942 (7th Cir. 2024).

5

A.  **Defendants as Fiduciaries**

On the first element, Defendants do not contest the allegation that they are Plan fiduciaries; rather, they argue that they did not act as fiduciaries when they allocated the forfeitures. They assert that allocating forfeitures was a "settlor" function because it concerned the designation of Plan assets rather than the implementation of payment decisions.

"It is not enough to allege merely that a defendant is a fiduciary; the defendant must have been 'acting as a fiduciary . . . when taking the action subject to complaint.'" *Appvion*, 99 F.4th at 943 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). A person acts as a fiduciary "only 'to the extent' that he acts in such a capacity in relation to a plan." *Pegram*, 530 U.S. at 225–26 (quoting 29 U.S.C. § 1002(21)(A)). That capacity includes having discretionary authority or control over plan administration and exercising that discretion in managing the plan. 29 U.S.C. § 1002(21)(A); *Appvion*, 99 F.4th at 943. In contrast, a person acts as a settlor when he "makes a decision regarding the form or structure of the [p]lan," such as establishing terms about "who is entitled to receive [p]lan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).

In their filings, the parties identify a growing number of district courts across the country that are considering claims like the ones asserted here. Most cases that considered whether forfeiture allocation is a fiduciary function answered the question affirmatively. *See, e.g.*, *Fumich v. Novo Nordisk, Inc.*, 2025 WL 2399134, at *6 (D.N.J. Aug. 19, 2025) (collecting cases); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 889 (C.D. Ill. 2025). The few courts that construed forfeiture allocation as a settlor function did so because they construed the plaintiffs' claims as a challenge to plan terms. In *Naylor v. BAE Systems, Inc.*, 2024 WL 4112322, at *6 (E.D. Va. Sept. 5, 2024) and *McWashington v. Nordstrom, Inc.*, 2025 WL 1736765, at *13 (W.D. Wash. June 23,

6

2025), the courts held that the plans at issue granted no discretion over how the plan administrators could allocate forfeitures, so the plaintiffs were effectively challenging the terms outlining the allocations. And in *Hutchins v. HP Inc. (Hutchins II)*, 767 F. Supp. 3d 912, 921–22 (N.D. Cal. 2025), the court held that the plaintiffs sought to erase discretion because they argued that applying forfeitures to plan expenses over employer contributions was the only way for the defendants to be loyal to plan participants and beneficiaries. According to that court, a rule allowing only payment of plan expenses would provide an additional benefit to participants that was not guaranteed by the plan, so the plaintiffs effectively challenged the plan's provision of benefits. *Id.*

Turning back to our case, Plaintiffs allege that Defendants were fiduciaries of the Plan who had discretionary control over the forfeitures, and Plaintiffs challenge the exercise, not the existence, of that discretion. [96] ¶¶ 115, 173. This is done in an effort to demonstrate they are not settlors. Like in *Naylor* and *McWashington*, Defendants attack these allegations of discretion as implausible based on the plain language of the Plan. They argue that any discretion in Section 7.4 is tempered by Section 9.2, which provides that forfeitures "shall be applied to reduce the amount of Company Matching Contributions or Company Basic Contributions." According to Defendants, they lacked discretion and operated as settlors because the Plan requires that they use forfeitures for employer contributions first. Alternatively, they argue that Plaintiffs seek the forfeitures as an additional benefit, as in *Hutchins II*, and thus only challenge Defendants' actions as settlors.

Analyzing the Plan's language under federal common law, the Court must give the Plan language its plain meaning and read it as a whole. *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 618 (7th Cir. 2021); *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). "All language of a plan should be given effect without rendering any term superfluous." *Schultz*, 670 F.3d at 838. If language is open to more than one reasonable interpretation, it is

7

ambiguous. *Temme v. Bemis Co.*, 622 F.3d 730, 734 (7th Cir. 2010). If ambiguous terms are not clarified elsewhere in the document or in related documents, their interpretation is a question of fact that cannot be determined on a motion to dismiss. *Id.* at 734–35; *Kap Holdings, LLC v. MarCone Appliance Parts Co.*, 55 F.4th 517, 526 (7th Cir. 2022). While Section 9.2's provision that forfeitures "shall be applied" to employer contributions to some extent cannot be ignored, neither can the language of Section 7.4 that allows for forfeitures to be used for Plan expenses. A reasonable reading that gives effect to both provisions is that some forfeitures in a given year must be used to reduce employer contributions, but not necessarily all. Under this interpretation, Defendants would retain discretion to allocate the remainder to further reduce employer contributions or reduce Plan expenses. Thus, it is reasonable for Plaintiffs to allege that the Plan grants Defendants discretion. Ambiguity remains as to the limits of potential discretion under the Plan, so its interpretation is a question of fact to be determined at a later stage.[2] *See Kap Holdings*, 55 F.4th at 526. At this juncture, it is enough that the plain language does not mandate an interpretation that defeats Plaintiffs' claims.

Plaintiffs' claims also survive the argument that they seek a *per se* ban on the use of forfeitures for reducing employer contributions. In *Hutchins v. HP Inc.* (*Hutchins I*), 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024), the plaintiffs argued in their brief that a fiduciary is always required to choose to pay plan expenses or breach its fiduciary duties. Because of that argument, the court held that they challenged the plan itself. *Id.*; *Hutchins II*, 767 F. Supp. 3d at 923. In contrast, Plaintiffs disclaim in their brief that Defendants must always use forfeitures for Plan expenses.

---

[2] Section 10.2 of the Plan provides that "all property and funds of the [Plan's] Trust" shall be used to pay for administrative expenses "to the extent not expressly assumed by [ITW]." Forfeitures are Plan assets, so if ITW was assuming expenses by using forfeitures, that would be no different from using "all property and funds" to pay the expenses. Thus, the language implies a distinction between Plan assets and ITW's assets used to pay expenses. ITW's discretion over its own assets to pay expenses does not weigh on Defendants' discretion over forfeitures to pay expenses, so the provision does not readily resolve the latter's ambiguity.

8

Rather, Plaintiffs assert that Defendants breached their duties by not considering whether specific forfeiture allocations benefited the Plan participants rather than just themselves and choosing the option that only benefited themselves. This fits with their allegations identifying specific amounts of forfeitures allocated in 2017 through 2023 and claiming that Defendants "improperly steered" those assets away from paying Plan expenses "and instead used [the money] to benefit the Company." [96] ¶¶ 116–17. As a result, "the Plan received decreased Company contributions." *Id.* ¶ 177. Making all inferences in Plaintiffs' favor at this stage, these allegations are limited to Defendants' alleged actions and not the Plan's allowance for reducing employer contributions. Thus, Plaintiffs sufficiently allege a challenge to Defendants' conduct in their fiduciary capacities.

    **B.**    **Breach of Duty of Loyalty**

Having found that Plaintiffs sufficiently pled that Defendants acted as fiduciaries, the next inquiry is whether Plaintiffs sufficiently pled a breach of their fiduciary duties of loyalty. This duty requires Defendants to act "solely in the interest of the [Plan] participants and beneficiaries." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (quoting 29 U.S.C. § 1104(a)(1)(A)). The goal of requiring fiduciaries to act for the "exclusive purpose" of providing benefits to participants is to replace direct monitoring and to prevent internal misuse of employee pensions. *Halperin v. Richards*, 7 F.4th 534, 545–46 (7th Cir. 2021). This duty is one of "the highest known to the law." *Appvion*, 99 F.4th at 943 (citation omitted). It is "strong medicine" that prevents "actions against fiduciaries who profit by using trust assets, even where the plan beneficiaries do not suffer direct financial loss." *Halperin*, 7 F.4th at 546.

A plausible duty-of-loyalty claim exists where a plaintiff alleges that a plan's fiduciary "[d]eliberately favor[ed] the corporate treasury" when administering the plan. *Frahm v. Equitable Life Assurance Soc'y of U.S.*, 137 F.3d 955, 959 (7th Cir. 1998). This was demonstrated in *Appvion*,

9

where the Seventh Circuit reversed dismissal of a duty-of-loyalty claim because the complaint alleged that the defendants had financial incentives to use inflated valuations and achieve those benefits by doing so to the alleged detriment of plan participants. 99 F.4th at 946. Here, Plaintiffs similarly allege that Defendants had a financial incentive to use forfeitures for reducing ITW's contributions and achieved that incentive to the detriment of Plan participants. Plaintiffs also allege that Defendants would benefit from using forfeitures to reduce ITW's future contributions. [96] ¶ 115. Doing so, however, would harm Plan participants and thus "place[] [Defendants'] own interests above the interests of the Plan." *Id.* ¶¶ 113, 118. By using all forfeitures for ITW's contributions and none for Plan expenses during the relevant time period, Defendants allegedly failed to act for the exclusive purpose of "defraying reasonable expenses of administering the plan." *Id.* ¶¶ 175–77 (quoting 29 U.S.C. § 1104(a)(1)(A)(ii)). These are sufficient to raise Plaintiffs' claims "above the speculative level." *Appvion*, 99 F.4th at 944 (quoting *Twombly*, 550 U.S. at 555).

Defendants argue that Plaintiffs' claim exceeds the bounds of ERISA's duty of loyalty. According to Defendants, Plaintiffs request a *per se* breach any time a fiduciary uses forfeitures for employer contributions. But as discussed, Plaintiffs only allege liability for certain forfeiture use under the circumstances presented here. As explored in other cases, it is possible that using forfeitures for employer contributions benefits plan participants, such as when the employer cannot otherwise meet its obligations or wants to ensure that participant accounts are timely credited with the matching contributions they are owed. *See Buescher*, 791 F. Supp. 3d at 890; [124-1] at 26 (Department of Labor amicus brief in *Hutchins v. HP Inc.*, No. 25-826 (9th Cir. July 9, 2025)).[3]

---

[3] The Court can consider this "public court document" on this Rule 12(b)(6) motion. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022).

Defendants also argue that liability for using forfeitures to reduce employer contributions would establish a rule of maximizing employee benefits, which ERISA does not require. Even if Defendants are not required to use forfeitures for Plan expenses because they need not maximize benefits, the duty of loyalty does not allow them to use forfeitures for employer contributions for a reason other than benefiting Plan participants. The duty is one of the highest duties of the law and requires "an eye single toward beneficiaries' interests." *Pegram*, 530 U.S. at 235 (cleaned up). Plaintiffs only allege, however, that Defendants acted with an eye towards themselves rather than Plan participants, and this is sufficient to allege a plausible claim.

Defendants' remaining argument is that courts and government agencies have historically allowed the use of forfeitures to reduce employer contributions. They rely on *Hutchins II*, 767 F. Supp. 3d at 922–23, which found persuasive a proposed Treasury Department regulation allowing reduction of employer contributions in defined contribution plans.[4] They also cite an amicus brief by the Department of Labor filed in another case with similar claims, which argued that the mere use of forfeitures to reduce employer contributions does not violate ERISA. [124-2] at 10–11. Neither is persuasive, however, because they are focused on forfeiture use as a permissible act. As discussed, Plaintiffs do not challenge the permissibility of using forfeitures to reduce employer contributions under different circumstances. The mere fact that Defendants *can* make these allocations under the Plan is not mutually exclusive with the allegation that they were motivated by selfish purposes that breached their duty of loyalty. Further, the Court cannot create a presumption of loyalty based on a plan's allowance of an action because ERISA's duties "trump[] the instructions of a plan document." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421, 425

---

[4] The existing regulation requires that forfeitures "must be used as soon as possible to reduce the employer's contributions under the plan" in pension plans. 26 C.F.R. § 1.401-7(a). The Plan is a profit-sharing plan, so the regulation is not binding. Plan § 1.1.

(2014). Determining Defendants' motivations is a question better resolved at a later stage. *See, e.g.*, *Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772, at *9 (N.D. Ill. Jan. 26, 2026) (denying motion to dismiss because dispelling the alternative explanation that allocating forfeitures to reduce employer contributions was in the best interests of the plan and its participants was "not obvious at this point" and "warrant[ed] further inquiry during discovery").[5]

### C. Harm to the Plan

The final requirement for Plaintiffs' claim is that they allege harm caused by Defendants' breach. The Complaint alleges that Defendants' use of forfeitures for ITW's contributions incurred avoidable Plan expenses that Plan participants had to pay, so they lost millions of dollars in benefits. [96] ¶¶ 113, 115, 117–18, 177–78. Defendants argue that no harm occurred because money never left the Plan, so there was no comparative or absolute loss. That argument is incongruent with Plaintiffs' allegations on both counts. First, if Plaintiffs paid more Plan expenses than they would have had the forfeitures been used differently, *id.* ¶ 118, then that is more money leaving the Plan to pay expenses—a comparative loss. *Cf. Appvion*, 99 F.4th at 943 ("[I]f the defendants misled the employees into overpaying for Appvion's stock, they harmed the Plan."). Second, by using forfeitures to lower ITW's contributions [96] ¶ 115, ITW was required to put less money into the Plan—an absolute loss. *See Gardner-Keegan*, 2026 WL 194772, at *10 (providing

---

[5] In their briefs and notices of supplemental authority, Defendants highlight cases that have dismissed duty-of-loyalty claims based on the reasoning outlined in the *Hutchins* cases. *See Gardner-Keegan v. W.W. Grainger, Inc.*, 2026 WL 194772, at *7 & n.3 (N.D. Ill. Jan. 26, 2026) (collecting cases); *Tillery v. Wakemed Health & Hosps.*, 2026 WL 125784, at *4 (E.D.N.C. Jan. 15, 2026) (collecting cases and applying the same reasoning). Some are distinguishable because of the terms of the plans at issue. *See, e.g.*, *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *4 (S.D.N.Y. Oct. 27, 2025) (finding that the plan did not require employer contributions, so any forfeiture used for employer contributions benefited the participants and did not infer a breach of the duty of loyalty). Others that are factually similar to *Hutchins* are unpersuasive for the same reasons discussed above. *See, e.g.*, *Garner v. Northrop Grumman Corp.*, 2025 WL 3488657, at *3–4 (E.D. Va. Dec. 4, 2025) (dismissing claim because the plan allowed the defendant to allocate forfeitures to employer contributions and there is no duty to maximize benefits); *del Bosque v. Coca-Cola Sw. Beverages LLC*, 2025 WL 3171326, at *4–5 (N.D. Tex. Nov. 13, 2025) (same).

a mathematical example of such absolute loss). It is sufficient that Plaintiffs have alleged that Defendants caused them to overpay for Plan expenses.

**III.  Violation of ERISA's Anti-Inurement Provision (Claim 3)**

Related to ERISA's fiduciary duty of loyalty is its ban on fiduciaries using the assets of a plan to "inure to the benefit of any employer" rather than holding them "for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." 29 U.S.C. § 1103(c)(1). This anti-inurement provision is "another formulation of the rule" that fiduciaries must act for the "exclusive purpose of" the Plan and its participants, which is "one of the most fundamental and distinctive principles of trust law." *Halperin*, 7 F.4th at 545. Plaintiffs allege that forfeited funds are Plan assets, and Defendants used them to defray its own contributions rather than Plan expenses. [96] ¶¶ 183–84. Defendants respond that any benefits that ITW enjoyed were only incidental, which does not violate the anti-inurement provision.

The primary authority on the anti-inurement provision is *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999). In *Hughes*, the defendant-employer's retirement plan accrued a massive surplus, which the defendant used to add an early retirement program to the plan. *Id.* at 436. Participating employees sued and claimed that the defendant was using the surplus for its sole and exclusive benefit, in violation of ERISA's anti-inurement provision, because the new program would lower the defendant's labor costs. *Id.* at 441. The Supreme Court rejected this argument and dismissed the claim because the plaintiffs did not dispute that the defendant used the surplus "for the sole purpose of paying pension benefits to [p]lan participants." *Id.* at 442–43. The lowered labor costs were merely "incidental benefits" that did not give rise to an inurement claim. *Id.* at 445–46. Defendants also cite *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984), which similarly held that no inurement existed where the employer set up another retirement account that

transferred funds and incidentally lowered the employer's costs. The defendant's use of plan assets did not reduce any benefits for participants, and the defendant was allowed to make a decision "both in the best interests of the preservation of the fund and . . . also not adverse to the employer's interest." *Id.* at 552; *see also Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 189–90 (7th Cir. 1991) (citing *Holliday* approvingly).

Although Defendants cite *Hughes* and *Holliday* to conclude that ITW's reduced contributions were only incidental benefits, the facts alleged here distinguish this case. Plaintiffs allege that Defendants used forfeitures to benefit themselves and not to benefit Plan participants. [96] ¶¶ 113, 115, 118. Based on the allegations in the Complaint, Defendants' forfeiture allocation is at odds with Plaintiffs' interests. ITW's lessened contributions were not an incidental benefit, according to Plaintiffs, but rather a direct benefit that motivated their actions. *Id.* Assuming these allegations to be true, as the Court must, Plaintiffs plausibly claim that Defendants acted to inure ITW rather than the Plan, in violation of ERISA.

## IV. Breach of Duty to Monitor Other Fiduciaries (Claim 4)

Defendants ask the Court to revisit Plaintiffs' monitoring claim against ITW and the Board as it relates to the new claims. In a prior order, the Court explained that a breach of the duty to monitor another fiduciary is predicated on that other fiduciary's breach of a fiduciary duty of prudence or loyalty. [53] at 5 (citing *Albert v. Oshkosh Corp.*, 47 F.4th 570, 583 (7th Cir. 2022)). Because Plaintiffs' prudence claim survived dismissal and they sufficiently alleged how ITW and the Board failed to monitor the Committee's actions, Plaintiffs' derivative monitoring claim survived dismissal, too. *Id.* Now that Plaintiffs have added a duty-of-loyalty claim, Defendants request dismissal of the monitoring claim to the extent that it is predicated on the Committee's alleged breach of the fiduciary duty of loyalty.

The duty-of-loyalty claim is sufficiently alleged against the Committee. The Complaint alleges that ITW and the Board had a duty to monitor whether the Committee was adequately performing its fiduciary obligations. [96] ¶ 189. It also alleges that they failed to monitor and evaluate the Committee's performance, "standing idly by as the Plan suffered significant losses as a result of the Committee['s] imprudent actions," including the forfeiture allocations. *Id.* ¶¶ 173–80, 191(a). According to Plaintiffs, "Plan participants would have had more money available to them for their retirement" had ITW and the Board adequately monitored the Committee. *Id.* ¶ 192. These allegations are sufficient for the monitoring claim to survive a motion to dismiss.

## V. Co-Fiduciary Liability

As a final matter, Defendants move to dismiss Plaintiffs' claims to hold each Defendant liable for one another's breach of the duty of loyalty or violation of the anti-inurement provision. A fiduciary can be liable for its co-fiduciary's breach when it either (1) knowingly participated in or concealed that breach, (2) it failed to make reasonable efforts to remedy the breach, or (3) the fiduciary's failure to comply with its duties under ERISA enabled its co-fiduciary's breach. *Appvion*, 99 F.4th at 949 (citing 29 U.S.C. § 1105(a)). The first two avenues for imposing liability require that a fiduciary know of another fiduciary's breach, but Plaintiffs do not allege that Defendants knew about each other's breach of the duty of loyalty or violation of the anti-inurement provision. *See id.*; [96] ¶¶ 180, 186. Knowledge is not needed, however, for the third avenue. *Appvion*, 99 F.4th at 949. Plaintiffs allege that ITW and the Board had authority over the Committee and a duty to monitor it. *See* [96] ¶¶ 29, 32. That is sufficient for claims of co-fiduciary liability to survive against ITW and the Board. As for the Committee, however, Plaintiffs do not allege how a breach by the Committee enabled a breach by ITW or the Board. They only include a conclusory allegation that the Committee "is also liable for the breaches of its co-fiduciaries."

*Id.* ¶¶ 180, 186. Nowhere else does the Complaint allege that the Committee held responsibility over ITW and the Board or otherwise enabled them to violate their duties of loyalty or the anti-inurement provision. Without sufficient allegations, the claims for co-fiduciary liability against the Committee are dismissed.

"Rule 15(a) says that a party may amend its complaint once as a matter of course. After that, leave to amend depends on persuading the judge that an amendment would solve outstanding problems without causing undue prejudice to the adversaries." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 819 (7th Cir. 2013). Although leave to amend should be freely given when justice so requires, district courts, "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (citation omitted). Plaintiffs have already had two opportunities to amend their complaint and used both opportunities to plead co-fiduciary liability, albeit for different claims. *See* [23], [30], [93], [96]. Additionally, fact discovery has closed. [118]. Allowing Plaintiffs to amend the Complaint a third time would delay discovery and cause undue prejudice to Defendants. Thus, Plaintiffs' co-fiduciary liability claims against the Committee are dismissed with prejudice.

## Conclusion

For the reasons above, Defendants' motion to dismiss [122] is granted as to the allegations of co-fiduciary liability against the Committee under claims 2 and 3 of the Complaint, which state no knowledge or enablement of the other Defendants' alleged breach. The motion is also granted as to claims 2, 3, and 4 to the extent they assert liability over Defendants' forfeiture allocations before February 21, 2019, which is barred by ERISA's statute of limitations. The co-fiduciary liability claims against the Committee and untimely claims are dismissed with prejudice.

Defendants' motion to dismiss [122] is otherwise denied, because Plaintiffs have sufficiently alleged that Defendants acted as fiduciaries, used forfeitures to reduce employer contributions instead of Plan expenses in violation of ERISA's fiduciary duty of loyalty and anti-inurement provision, and harmed Plaintiffs through a loss of benefits.

**SO ORDERED.**

Dated: February 9, 2026

Sunil R. Harjani
United States District Judge